UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**AMC MARINE SERVICE, INC.**                                      **CIVIL ACTION**

**VERSUS**                                                        **NO. 12-1168**

**POYDRAS ENERGY PARTNERS,**                                      **SECTION "K"(1)**
**L.L.C.**

### ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of plaintiffs AMC Marine Services, Inc. and AMC Liftboats, Inc. (Doc. 31). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion in part and grants it in part.

Background

In November 2011, Poydras Energy, L.L.C. ("Poydras") contacted AMC Marine Services, Inc. ("AMC") in order to charter a vessel to assist in the performance of an offshore oilfield coiled tubing project. AMC sent Poydras a Blanket Time Charter which Poydras executed. Pursuant to that agreement AMC chartered the L/B DULARGE to Poydras from November 22, 2011 until December 1, 2011. AMC invoiced Poydras $107,645.00 for the charter of the DULARGE. To date, Poydras has not paid AMC for any charges incurred for the use of the DULARGE.

AMC Liftboats, Inc. ("Liftboats") entered into a Blanket Time Charter with Poydras in November 2011. Pursuant to that agreement, Liftboats chartered the L/B WHITNEY to Poydras from March 22, 2012 through April 18, 2012. Liftboats invoiced Poydras $52,040.00 for the March charter and $101,196.84 for the April charter for a total amount of $153,236.84. Poydras has not made any payment against the amount invoiced by Liftboats as a result of the charter of the

WHITNEY.

AMC and Liftboats filed this suit seeking to recover the outstanding amounts allegedly owed to them as charter hire for the DULARGE and the WHITNEY, as well as a late fee of 15% plus legal fees and costs allegedly due for Poydras's failure to timely pay the charter hire for the DULARGE and the WHITNEY. AMC and Liftboats now seek summary judgment for the alleged outstanding amounts owed to them.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497

F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Law and Analysis

A) Charter of the L/B DULARGE

It is undisputed that the there is a valid Blanket Time Charter between AMC and Poydras and that pursuant to that agreement AMC chartered the L/B DULARGE to Poydras from November 22, 2011 until December 1, 2011. However, beyond those two details, AMC and Poydras disagree about virtually everything else.

The declaration of Dean Guidry, the General Manager of AMC and Liftboats states that "[t]he M/V DULARGE and related services were in fact provided by AMC Marine to Poydras Energy, as agreed, and AMC received no complaint regarding the vessel or services provided." Doc. 31, Ex. M, p. 2. However, Poydras asserts that the DULARGE proved to be unsuitable for the work required, and that Poydras incurred delays and additional costs on the coiled tubing project because it had to hire other companies to accomplish what it had chartered the DULARGE to perform.     In opposing the motion, Poydras relies upon the declaration of Dan Westerfield, the

Operations Supervisor of Poydras, which states:

- "The project required . . . that a vessel retrieve produced water at Poydras' Main Pass 35 Platform (the "Platform"), then take this produced water to the SL20103 Well No. 1, Serial No. 227644 (the 'Aquila Well')";
- "Poydras instructed AMC that the vessel would need to be a shallow draft vessel, with a draft of no more than 4 ½ to 6 feet, as it would have to navigate in very shallow waters of only 8 ½ to 12 feet in depth"; and
- "On or about November 22-25, 2011 AMC provided the L/B DULARGE, a vessel that was not suitable for the project."
- "The L/B DULARGE could not reach the Platform and could not take the produced water to the Aquila Well."

Doc. 34, Ex. 1. Additionally, Dan Westerfield filed a supplemental declaration stating, in pertinent part, that:

- "Retrieval of the produced water from the Platform was a portion of coiled tubing project, it was not a separate project";
- "AMC's sole purpose in traveling to the Platform was to retrieve the produced water and transport it to the Aquila Well; AMC did not perform any other work at the Platform";
- "AMC's failure to provide a vessel capable of reaching the Platform also caused a delay in the completion of the coiled tubing work by CETCO. AMC's failure to provide the produced water to CETCO meant that CETCO's personnel and equipment could not begin the coiled tubing work on time";
- "AMC's failure to provide a vessel capable of taking on the produced waters from the Platform required that Poydras pay Bonvillian and Tiger to retrieve the produced water, store it in tanks, and transport it to the Aquila Well. Poydras would not have had to hire Bonvillian and Tiger if AMC's vessel was capable of performing"; and
- "US Liquids cleaned the tanks that Poydras was required to rent from Tiger due to AMC's failure to transport the produced water on its liftboat.

Doc. 43, Ex. A.

Poydras has also submitted the declaration of Chris Guidroz, an independent petroleum

4

consultant retained by Poydras to work on the coiled tubing project at the Aquila Well, which states that "AMC knew that the vessel required for the coiled tubing project would need to be a shallow draft vessel, and AMC has said that they were aware of the depth requirements at the Platform, as they previously worked in this field."  Doc. 34, Ex. 2.  Significantly, AMC submitted the specification sheet for the DULARGE which reflects a "Design Draft" of 6' 9." AMC does not assert that it provided Poydras with a copy of that specifications sheet prior to the time that AMC assigned the DULARGE to the charter.

The declarations of Mr. Westerfield and Mr. Guidroz create a genuine issues of material fact, i.e, whether the DULARGE satisfied the draft requirements of the project, whether the vessel was suitable for the coiled tubing project, and what work was performed by the DULARGE.  Those genuine issues of material fact preclude a grant of summary judgment in favor of AMC. Given those issues of fact, the Court need not address the fact that AMC disputes that Poydras had to hire Bonvillian and Tiger Tugs to perform work originally to be performed by the DULARGE.

B.  Charter of the L/B WHITNEY

Liftboats submitted a copy of the charter between itself and Poydras.  The charter provides that "[h]ire shall be payable at a rate agreed upon by the parties" and further provides that "[t]he parties agree that should it be necessary to obtain legal counsel to resolve any dispute hereunder, including, but not limited to, collection of unpaid invoices, that the prevailing party shall be entitled to recover its legal fees and costs incurred as a result of the dispute."  Doc. 31, Ex. H, p. 1and 4.  In support of its motion, Liftboats also submitted invoices totaling $153,236.84 for the charter of the WHITNEY as well as vessel logs supporting those invoices. Doc. 31, Ex. J and Ex. K. The invoices include a statement that "15% Added to Total After 30 Days."  The declaration of Dean Guidry

states that each of the invoices submitted by Liftboats is a "true, correct, and complete copy" of the invoices reflecting "the various agreed upon rates for the various services rendered in connection with the hire of the L/B WHITNEY."  Doc. 31Ex. M.  The declaration also states that Poydras has not paid any amount on those invoices.  Poydras has not offered any competent summary judgment evidence which raises a genuine issue of material fact concerning the amount of the charges invoiced or that Poydras has paid any portion of the amount invoiced.  Because Poydras has failed to raise a genuine issue of material fact precluding summary judgment, the Court grants the motion to the extent that it seeks summary judgment on Liftboats' claim for $153, 236.84 for the hire of the L/B Whitney, as well as a 15% charge for the failure to pay the invoices within 30 days and the attorney's fees and costs incurred in litigating the claim for the amount owed.

     New Orleans, Louisiana, this 23nd day of April, 2013.

                                    STANWOOD R. DUVAL, JR.
                                UNITED STATES DISTRICT JUDGE